IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 22, 2015

**IN RE MAKENDRA E.**

**Appeal from the Chancery Court for Dyer County**
**No. 14AA3     Martha Brasfield, Chancellor**

_____

**No. W2015-01374-COA-R3-PT – Filed January 27, 2016**
_____

This is a termination of parental rights case.  The child at issue in this case was placed in foster care at age two.  When the child was ten years old, the child's foster parents filed a petition in Dyer County Chancery Court seeking to terminate the parental rights of the child's parents and to adopt the child.  The trial court entered an order terminating the parental rights of the child's mother and father and granting the foster parents' petition to adopt the child.  The mother has appealed the termination of her parental rights on the ground of abandonment by willful failure to visit in the four months prior to the filing of the petition to terminate her parental rights.  The mother also appeals the trial court's finding that termination of her parental rights is in the child's best interest.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, and KENNY ARMSTRONG, JJ., joined.

Marianna Williams, Dyersburg, Tennessee, for the appellant, Elizabeth B.

Vanedda Prince Webb, Dyersburg, Tennessee, for the appellees, David E. and Ruthene E.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

The child at issue in this case, Makendra E., was born in December 2004 to Elizabeth B. ("Mother") and Johnny E. ("Father").  Mother and Father were never married.  In June 2007, the Department of Children's Services was contacted after a family member that had

been caring for the child was no longer able to do so due to a medical condition. Shortly thereafter, the Dyer County Juvenile Court found the child to be dependent and neglected, and the child was placed in foster care with David and Ruthene E. (together, "Appellees"). The child has lived with Appellees continuously since that time. In January 2009, the juvenile court ordered that permanent guardianship of the child be awarded to Appellees.

On April 14, 2014, Appellees filed a petition in the Dyer County Chancery Court seeking to terminate both Mother's and Father's parental rights to the child and seeking to adopt the child. Among other things, Appellees alleged that Mother and Father had abandoned the child by their willful failure to visit. Tenn. Code Ann. § 36-1-113(g)(1) (2014); Tenn. Code Ann. § 36-1-102(1)(A)(i). They further alleged that it was in the child's best interest that the parental rights of both parents be terminated.

Mother filed an answer on June 12, 2014. Among other things, Mother denied abandoning the child and asserted that her failure to visit was the result of Appellees' actions to interfere with her visitation and deny her access to the child. Father did not file an answer to Appellees' petition and never participated in the termination proceedings.

A bench trial on Appellees' petition was held on April 27, 2015. By the time of the trial, the child was ten years old and had been living with Appellees for almost eight years. Appellees testified that they had formed a bond with the child and that the child was excelling in school. Much of the testimony focused on Mother's failure to visit the child. Mother testified that the last time she saw the child was at Appellees' church. Testimony from both sides established that Mother appeared unannounced at Appellees' church on a Sunday morning and asked to speak with the child. David E. got the child from her Sunday school class and brought her to Mother; the two spoke briefly, and Mother left. Mother testified that the interaction probably occurred in 2013; Appellees testified that the interaction occurred about four years prior to trial. Appellees testified that Mother's visit at the church was her only interaction with the child since Appellees were granted permanent guardianship of the child in January 2009. The testimony presented established that on a subsequent occasion, Mother attempted to visit the child by showing up unannounced at David E.'s mother's house but was unable to visit the child because Ruthene E. had taken her shopping. Additionally, Mother testified that she tried to bring the child presents in December 2013 but did not because Appellees would not allow her to give them to the child directly. Appellees denied that Mother ever tried to bring the child presents. Though Mother testified that she had tried to visit the child numerous other times, she did not cite any specific examples and stated only that Appellees prevented her from seeing the child. Mother acknowledged, however, that she did not have Appellees' phone number and did not know how to contact them. Appellees testified that Mother never asked for their telephone number and never asked to visit the child more frequently.

The trial court entered a final judgment on June 30, 2015. The trial court found that clear and convincing evidence established that each parent had willfully failed to engage in more than token visitation with the child for a period of four consecutive months immediately preceding the filing of Appellees' petition and that termination of parental rights was in the child's best interests. Additionally, the trial court found that the adoption was in the child's best interests. The trial court therefore terminated the parental rights of Mother and Father and granted Appellees' petition for adoption. Mother filed a timely notice of appeal on July 22, 2015. Father did not appeal.

## ISSUES PRESENTED

Mother presents the following issues on appeal, as we have restated them:

1.  Whether the trial court erred in finding, by clear and convincing evidence, that Mother abandoned the child by willfully failing to visit.

2.  Whether the trial court erred in finding by clear and convincing evidence that it was in the child's best interest to terminate Mother's parental rights.

## STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993)); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although a parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id*.; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate parental rights are governed by statute. A party seeking to terminate parental rights must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination.[1] Tenn. Code Ann. § 36-1-

---

[1] The statutory grounds for terminating parental rights are listed in Tennessee Code Annotated section 36-1-113(g). The petitioner needs only to establish the existence of one of the statutory grounds to support a

113(c)(1); *In re Angela E.*, 303 S.W.3d 240, 251 (Tenn. 2010). Second, they must prove that terminating parental rights is in the child's best interests.[2] Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. In light of the fundamental rights at stake in a termination proceeding, the grounds for termination and best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d at 653.

In light of the heightened burden of proof in parental termination cases, a reviewing court must modify the customary standard of review set forth in Tennessee Rule of Appellate Procedure 13(d). First, we review the trial court's specific factual findings *de novo* with a presumption of correctness unless the evidence in the record preponderates otherwise. Tenn. R. App. P. 13(d); *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). Second, we must determine whether the facts, as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence that the elements necessary to terminate parental rights have been established. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Bernard T.*, 319 S.W.3d at 596-97. Whether the facts are sufficient to support termination of parental rights is a conclusion of law, which we review de novo with no presumption of correctness. *In re R.L.F.*, 278 S.W.3d 305, 312 (Tenn. Ct. App. 2008), *overruled on other grounds by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *In re Valentine*, 79 S.W.3d at 548).

In its order, the trial court indicated that its ruling was based on the testimony of the witnesses at trial. Unlike appellate courts, trial courts are able to observe the manner and demeanor of witnesses as they testify. *In re M.A.R.*, 183 S.W.3d 652, 661 (Tenn. Ct. App. 2005) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). Thus, when the resolution of an issue depends on credibility and the weight given to witness testimony, the trial court is in a far better position than this Court to resolve it. *In re Malaysia C.*, --- S.W.3d ----, 2015 WL 572954, at *5 (Tenn. Ct. App. Feb. 10, 2015); *In re Jacobe M.J.*, 434 S.W.3d 565, 569 (Tenn. Ct. App. 2013). Accordingly, we will not re-evaluate the trial court's assessment of witness credibility absent clear and convincing evidence to the contrary. *In re M.A.R.*, 183 S.W.3d at 661 (citing *Wells*, 9 S.W.3d at 783).

---

termination. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

[2] The factors to be considered in a "best interests" analysis are listed in Tennessee Code Annotated section 36-1-113(i).

DISCUSSION

*Abandonment—Willful Failure to Visit*

Tennessee Code Annotated section 36-1-102(1)(A)(i) defines "abandonment" as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Appellees' petition to terminate Mother's and Father's parental rights was filed on April 14, 2014. Mother concedes that she did not visit the child during the four-month period immediately preceding that date. She argues, however, that the trial court erred in finding that she abandoned the child under the statutory definition of abandonment because the record does not establish that her failure to visit the child during that period was willful.

"The requirement that the failure to visit or support be 'willful' is both a statutory and a constitutional requirement." *In re Alysia S.*, 460 S.W.3d 536, 565 (Tenn. Ct. App. 2014) (quoting *In re Adoption of Kleshinski*, No. M2004-00986-COA-R3-CV, 2005 WL 1046796, at *18 (Tenn. Ct. App. May 4, 2005)). The element of willfulness is therefore essential and central to the determination of abandonment. *Id.* In the context of a termination proceeding, willfulness does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will. *In re Audrey S.*, 182 S.W.3d at 863. Rather, the parent's conduct must have been willful in the sense that it was intentional or voluntary rather than accidental or inadvertent. *Id.* Failure to visit or support a child is "willful" when a parent is aware of his or her duty to visit or support the child, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *Id.* at 864. The parent's failure to visit or support is not excused by another person's conduct unless the conduct actually prevented the parent with the obligation from performing his or her duty or amounted to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. *Id.* (citations omitted).

The willfulness of a parent's conduct depends on his or her intent. *In re Alysia S.*, 460 S.W.3d at 566. Because the trier-of-fact cannot peer into the parent's mind to assess his or her intentions or motivations, intent is seldom capable of direct proof and must be inferred

from circumstantial evidence such as actions and conduct. *Id.* Additionally, because testimony may be critical in determining whether the parent's conduct was willful, trial courts are in a better position than this Court to determine willfulness. *Id.*

Mother contends that her failure to visit the child was not willful because Appellees significantly restrained and interfered with her efforts to visit the child; however, there is no evidence in the record to support that assertion. Though Mother asserts that she tried to visit the child numerous times, she only recounted three such occasions at trial—each of which occurred prior to the four-month period immediately preceding the filing of Appellee's petition. On the first occasion, Mother appeared unannounced at Appellees' church on a Sunday morning asking to see the child, and David E. allowed her to do so. Appellees estimated that the visit occurred approximately four years prior to trial. On the second occasion, Mother appeared unannounced at David E.'s mother's house asking to see the child, but Ruthene E. had taken the child with her to the store. There is no testimony related to either of those two interactions that indicates Appellees restrained or interfered with Mother's efforts to visit the child. To the contrary, it is undisputed that David E. allowed Mother to visit with the child on the first occasion at Appellee's church. Regarding the second occasion, Appellees testified that the child simply was not available when Mother attempted to visit her at David E.'s mother's house; Mother does not allege otherwise. Lastly, Mother cites her own testimony at trial that she attempted to bring the child presents in December 2013 but was prevented from doing so by Appellees. We note, however, that Appellees both denied that Mother ever attempted to bring the child presents, and the trial court, in its order, specifically stated that "in general I found [Appellees'] testimony more credible than that of [Mother]." As we have already explained, we will not re-evaluate the trial court's assessment of witness credibility absent clear and convincing evidence to the contrary. *In re M.A.R.*, 183 S.W.3d at 661. There is no clear and convincing evidence to suggest that the trial court erred in its credibility assessment.[3] Moreover, even if we were to accept Mother's testimony, Appellees' conduct falls far short of constituting a "significant restraint of or interference" with Mother's efforts to develop a relationship with the child. The evidence clearly and convincingly establishes that Mother has never made a meaningful effort to consistently visit or form a relationship with the child.

Next, Mother contends that her failure to visit the child was not willful because she had a limited understanding of how to pursue visitation. The trial court found that despite whatever limitations she might have, Mother was not so limited that she failed to understand that she had to do more than try to visit the child twice in five years. The trial court

---

[3]In part, the trial court's credibility assessment was based on Mother's testimony that she never missed a court date during the juvenile court proceedings related to the child despite the existence of multiple juvenile court orders introduced into evidence stating that Mother was not present at hearings despite having proper notice.

determined that Mother's failure to visit the child was solely the result of her own lack of effort. Because, as we have explained, the trial courts are in a better position than this Court to determine whether a person's conduct was willful, we afford great deference to the trial court's findings as they relate to willfulness. Though Mother testified that she receives social security income for a mental disability, there is nothing in the record to suggest that she lacked an understanding of her duty to visit the child or how to pursue such visitation. Additionally, we note that Mother was able to find Appellees' church and David E.'s mother's house in separate attempts to visit the child. As such, we find no reason to disturb the trial court's determination that Mother's conduct was willful.

In this case, it is undisputed that Mother did not visit the child during the four-month period immediately preceding the filing of Appellees' petition to terminate Mother's parental rights. Additionally, as we have explained above, the evidence in the record supports the trial court's finding that Mother's failure to do so was willful. Therefore, having thoroughly reviewed the record, we conclude that there is clear and convincing evidence to support the termination of Mother's parental rights on the ground of abandonment by willful failure to visit.

### *Best Interests*

As explained above, once at least one ground for termination of parental rights has been established, the petitioner must prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Angela E.*, 303 S.W.3d at 251. Once the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination, the interests of the parent and the child diverge, and the interests of the child become the court's paramount consideration. *In re Audrey S.*, 182 S.W.3d at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize that terminating an unfit parent's parental rights is not always in the best interests of the child. *Id.* However, if the interests of the parent and the child conflict, courts must always resolve the conflict in favor of the rights and best interests of the child. Tenn. Code Ann. § 36-1-101(d).

The General Assembly has provided a list of factors that trial courts should consider in determining the best interests of the child in a parental termination case at Tennessee Code Annotated section 36-1-113(i). However, the list is "not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d at 667. Depending on the circumstances of the case, the consideration of a single factor or other facts outside the statutory factors may dictate the outcome of a best interest

analysis. *In re Audrey S.*, 182 S.W.3d at 878. In this case, the relevant factors include, but are not limited to, the following:

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

Tenn. Code Ann. § 36-1-113(i).

In its order terminating Mother's parental rights, the trial court made the following findings concerning the child's best interests:

> I find that it's in the best interest of the child for the parental rights of [Mother] and [Father] both to be terminated. Neither one has had any type of presence in this child's life since she has been living with [Appellees] either as a foster child or under the Order of Guardianship.
>
> I am especially impressed with the child's academic achievements. Especially when you consider the statements that [Mother] has made on the witness stand. [Ruthene E. is] obviously able to help her . . . with her reading, to read to her. And this child, rather than being slow, has turned out to almost – She's reading at an eighth grade level in the fourth grade. So obviously things were turned around with that.

The evidence presented supports the trial court's findings. The child has been in Appellees' home since she was two years old. The record establishes that the child is doing well in Appellees' home. She has formed a close bond with Appellees and their family and, with Ruthene E.'s help, is excelling in school. Appellees take the child on trips, to church, and out to eat. On the other hand, Mother only visited the child once in the five years preceding trial. Due to Mother's failure to visit, there is no indication that the child has any bond with Mother. To remove the child from the only home she has ever known, and where she has lived for eight years, would likely have a detrimental effect on the child's emotional and psychological condition. Therefore, having thoroughly reviewed the record and considered the totality of the circumstances, we conclude that there is clear and convincing evidence that termination of Mother's parental rights is in the child's best interest.

- 8 -

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed against the Appellant, Elizabeth B. Because Elizabeth B. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
ARNOLD B. GOLDIN, JUDGE